UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANTONYO A. BROWN,

    Petitioner,

v.

ERICA HUSS, *Warden*,

    Respondent.

Case No. 18-12670
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS [1] AND DENYING CERTIFICATE OF APPEALABILITY**

In 2015, Santonyo Brown was tried for shooting Mike Cobb. Although Cobb unequivocally testified that the person on trial was the person who shot him, some of his testimony was internally inconsistent or contradicted prior statements to the police. And Brown and another witness both testified that Brown was not the shooter. A Michigan jury apparently credited Cobb's account over Brown's and convicted Brown of, among other things, assault with intent to do great bodily harm. Brown's conviction was affirmed on appeal.

Brown has now come to federal court, seeking a writ of habeas corpus. He primarily argues that the evidence at trial was not sufficient for a rational trier of fact to find, beyond a reasonable doubt, that he was the person who shot Cobb. As explained below, the Court believes that the state appellate courts reasonably rejected this insufficient-evidence claim. So the Court will not grant Brown a writ.

I.

A.

The following are the facts relating to the shooting as stated by the Michigan Court of Appeals.

"Sometime between the late night of June 24, 2014, and the hours just after midnight on June 25, 2014, Mike Cobb was shot while riding his bicycle towards" a donut shop in Detroit. *People v. Brown*, No. 334810, 2018 WL 296112, at *1 (Mich. Ct. App. Jan. 4, 2018). "Cobb was riding towards the donut shop when he crossed paths with two young men coming from an alley behind the shop. . . . Cobb testified that he rode past them, close enough to reach out and touch them, he heard one of them say, 'That's Mike!' Cobb recognized one of the individuals as [Santonyo Brown]." *Id.* "Shortly after riding past them, Cobb began to feel dizzy and crashed into a pole." *Id.* Cobb was injured but made his way to the donut shop where two people in the shop helped Cobb to his house, which was a few blocks away. *Id.* "Upon arriving home, Cobb laid down on his bed and fell asleep for about two hours. When he woke up, Cobb found himself in a bloody bed, and realized for the first time that he might have been shot. Cobb got up and sought assistance from his neighbor." *Id.*

"While at the hospital, the police interviewed Cobb about what happened. Cobb reported that he was shot by a young man he recognized from [a] car wash. Cobb also remarked that he recognized the young man from an altercation they had regarding a prostitute, and gave a physical description." *Brown*, 2018 WL 296112, at *1. "The police later returned with a photo lineup and Cobb identified defendant's brother,

2

who looked similar and had a similar build." *Id*. Brown's "brother[,] [Aaron Brown,] was initially arrested, but later cleared. In the interim, the police had visited Cobb again with a second photo lineup, and Cobb identified [Santonyo Brown]. [Brown] was subsequently arrested." *Id*.

At trial, Cobb unequivocally identified Brown as the shooter. (ECF No. 8, PageID.405–06.) But some of his testimony was contradictory or was inconsistent with earlier statements to police. (*See e.g.*, ECF No. 8, PageID.403, 409–10, 416.) Marquisha Dahan testified that her boyfriend at the time, John Petty, had shot Cobb. (ECF No. 8, PageID.526, 535.) Brown also testified in his own defense; he told the jury that at the time of the shooting, he was babysitting his brother's children. (ECF No. 8, PageID.571.) There was additional testimony, including from police officers.

Having considered all the evidence, a jury convicted Brown of assault with intent to do great bodily harm less than murder and possession of a firearm during a felony. *Brown*, 2018 WL 296112, at *1. For the assault conviction, Brown was given 4 to 10 years' imprisonment; for the felony firearm conviction, he was given two years' imprisonment; the sentences were consecutive. *Id*. Earlier this year, Brown was released on parole. *See* MDOC Offender Tracking Information System, https://perma.cc/8X2Z-RGNG.

## B.

On appeal, Brown argued that the evidence was not sufficient for a conviction and that the conviction was against the great weight of the evidence. The Michigan Court of Appeals denied both claims and affirmed Brown's convictions. *See generally*

*People v. Brown*, No. 334810, 2018 WL 296112 (Mich. Ct. App. Jan. 4, 2018). The Michigan Supreme Court denied leave to appeal. *People v. Brown*, 913 N.W.2d 302, 302 (Mich. 2018).

## C.

In August 2018, Brown came to federal court. In particular, he filed a petition for a writ of habeas corpus. (ECF No. 1) Brown's petition raises the same two claims he raised on direct appeal: the evidence was not sufficient for a conviction and that the conviction was against the great weight of the evidence. (ECF No. 1, PageID.23.) The Warden has responded (ECF No. 7), and so the petition is ready for disposition.

## II.

The Antiterrorism and Effective Death Penalty Act (AEDPA) (and 28 U.S.C. § 2254 in particular) "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). Under 28 U.S.C. § 2254(d), if a claim was "adjudicated on the merits in State court proceedings," this Court cannot grant habeas corpus relief on the basis of that claim "unless the adjudication of the claim . . . resulted in a decision" (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." But if the state courts did not adjudicate a claim "on the merits,"

4

this "'AEDPA deference' does not apply and [this Court] will review the claim de novo." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

### III.

### A.

The Court begins with Brown's claim that there was insufficient evidence for a jury to have found him guilty beyond a reasonable doubt. The focus of this claim is that there was not sufficient evidence that Brown was the person who shot Cobb. (*See* ECF No. 1, PageID.23.)

As noted, Brown presented this claim to the Michigan Court of Appeals. In rejecting the claim, the court found that Brown's "argument that there was insufficient evidence to find that defendant was the shooter lacks merit." *Brown*, 2018 WL 296112, at *2. The court explained, "Cobb was close enough to see [Brown] as he rode past [him], had an unobstructed view of [Brown], and testified that there was enough light for him to see [Brown]." *Id.* "Moreover," the Michigan Court of Appeals explained, "Cobb's attention was drawn to defendant because he recognized defendant as someone he had seen at a nearby car wash a few times, and had an altercation with him a few days earlier regarding a prostitute." *Id.* The state appellate court recognized that there were "conflicting testimonies regarding whether Cobb knew [Brown's] nickname ['Tone'] and whether [Cobb] provided the police with the nickname," but it found that it needed to "resolve that conflict in favor of the prosecution." *Id.* And while "Cobb initially chose [Brown's] brother at the first photo lineup," the Michigan Court of Appeals found that "testimony indicated that [Brown]

5

and his brother [Aaron] shared roughly the same height and weight, and that they looked somewhat similar to one another. Consequently, it was not unreasonable for Cobb to initially identify [Brown's] brother." *Id.* "Further," said the state appellate court, "Cobb corrected any such mistake when he identified [Brown] at the second photo lineup. Moreover, Cobb had no difficulty identifying [Brown] by his features in court." *Id.* In addressing Brown's argument "that Cobb's physical description was not close to [Brown's] actual height and weight," the Michigan Court of Appeals pointed out that "Cobb admitted that he was not good at measurements" and "that identification does not require someone to know the suspect's weight or height." *Id.* at *3. The Michigan Court of Appeals thus found that sufficient evidence supported Brown's conviction.

And although not in the context of addressing Brown's sufficiency-of-the-evidence claim, the Michigan Court of Appeals also explained, "The jury also heard Cobb's varying testimony regarding collateral matters, such as the time the shooting took place, and was presented with evidence explaining why Cobb might be having some difficulty recounting precisely what happened that night, but chose to credit Cobb anyways." *Brown*, 2018 WL 296112, at *4. According to the state appellate court, "The jury simply carried out its duty of weighing the evidence and determining credibility, and resolved the competing testimonies in favor of Cobb." *Id.*

Given all of that explanation from the Michigan Court of Appeals, it clearly adjudicated Brown's insufficient-evidence claim "on the merits" as that phrase is used in 28 U.S.C. § 2254(d). That means this Court can grant habeas corpus relief on the

6

basis of Brown's insufficient-evidence claim only if "the adjudication of the claim . . . resulted in a decision" (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d).

Here, *Jackson v. Virginia* supplies the clearly established law. Under that Supreme Court decision, Brown must show that "after viewing the evidence in the light most favorable to the prosecution," no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). But because § 2254(d) applies, habeas corpus relief cannot be granted upon that showing. Instead, Brown must further show that the Michigan Court of Appeals' finding that a rational trier of fact could convict was objectively unreasonable. In other words, deference is owed to the trier of fact under *Jackson* and then further deference is owed to the Michigan Court of Appeals' finding that Brown had not cleared *Jackson*'s threshold for relief. *See Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) ("[T]wo layers of deference apply, one to the jury verdict, and one to the state appellate court.").

For the most part, Brown does not make a direct attempt to clear that twice-elevated hurdle. Instead, he focuses on § 2254(d)(2), i.e., Brown primarily argues that the Michigan Court of Appeals' decision was based on an unreasonable determination of the facts. (ECF No. 1, PageID.28.)

7

In particular, Brown takes issue with the following statements by the state appellate court:

> Cobb was close enough to see defendant as he rode past defendant, had an unobstructed view of defendant, and testified that there was enough light for him to see defendant. Moreover, Cobb's attention was drawn to defendant because he recognized defendant as someone he had seen at a nearby car wash a few times, and had an altercation with him a few days earlier regarding a prostitute. Thus, not only was Cobb able to visually recognize defendant, he was also able to identify defendant by name.

*Brown*, 2018 WL 296112, at *2. Brown points out that Cobb testified that as he rode past, someone said "That's Mike," but Cobb did not know who made the statement. (ECF No. 1, PageID.29.) Brown also points out that when a police officer visited Cobb in the hospital, Cobb stated that three months before the shooting, Brown had told Cobb "I should crack your head," yet, at trial, Cobb stated that Brown made that statement two days before the shooting. (ECF No. 1, PageID.30.) Brown further highlights that a police officer who talked to Cobb wrote, "Victim states, 'This is Tone, he works at car wash, he shot me," but then, at trial, Cobb indicated that it was the police who told Cobb the name "Tone." (ECF No. 1, PageID.30.) Further, Brown points out that Dahan testified that her former boyfriend was 5' 9" and 145–150 pounds and someone with her boyfriend at the time of the shooting was 5' 5" and also about 145–150 pounds; this is consistent with Cobb's estimate of the shooter's size whereas Brown was 6' 2" and 195 pounds. (ECF No. 1, PageID.25, 31.)

The Court acknowledges that Cobb's testimony was at points somewhat internally inconsistent or inconsistent with statements he made to police. Indeed, the

8

prosecution admitted at closing argument that "Michael Cobb's testimony . . . it's got some warts." (ECF No. 8, PageID.589.)

But the Court cannot say that when the evidence is construed in the light most favorable to the prosecution, that the Michigan Court of Appeals' conclusion that a trier of fact could rationally vote to convict Brown was unreasonable or was based on an unreasonable determination of the facts. Although Cobb inconsistently testified that the shooting occurred around 6:00 in the evening and 1:00 in the morning (ECF No. 8, PageID.409–10, 440), he also stated that there was enough light for him to see the person whom he rode past (*id.* at PageID.434–35). And whether it was months before or days before the shooting, it remains that Cobb testified that he knew Brown from prior incidents. (*Id.* at PageID.427–31, 439.) As for Cobb's estimate of the size of the shooter (*id.* at PageID.416), the Michigan Court of Appeals reasonably determined that Cobb was not good at measurements (*see id.* at PageID.433–34). As for Brown's nickname "Tone," a police officer testified that Cobb told her that the suspect's nickname was "Tone." (*Id.* at PageID.482.) And even if it was the other way around and the officer told Cobb about the nickname (*see id.* at PageID.422), that does not change the fact that Cobb picked Brown out of the photo array (*id.* at PageID.400–403). In the end, Cobb was unequivocal that the person on trial was the person who shot him. (*Id.* at PageID.405–06.) And in applying *Jackson*, the Michigan Court of Appeals was not supposed to "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Tanner v.*

9

*Yukins*, 867 F.3d 661, 672 (6th Cir. 2017). Accordingly, the Court finds that Brown has not cleared § 2254(d)(1) or § 2254(d)(2).

In short, § 2254(d) prevents this Court from granting Brown habeas corpus relief on his claim that the evidence at trial was insufficient for a conviction.

## B.

Brown might also be asserting that his convictions are against the great weight of the evidence. (ECF No. 1, PageID.23.) To the extent he does raise that claim, it is not a claim upon which this Court can grant a writ of habeas corpus. *Lay v. Skipper*, No. 20-1391, 2021 WL 1884060, at *2 (6th Cir. Jan. 28, 2021); *Phillips v. Vashaw*, No. 20-1280, 2020 WL 5758680, at *1 (6th Cir. July 30, 2020). And even if the claim were a basis for the writ, the Michigan Court of Appeals addressed and rejected that claim. *Brown*, 2018 WL 296112, at *3–4. So for reasons similar to those set out above, § 2254(d) would bar habeas corpus relief.

## IV.

As explained, the state appellate court's decision was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Accordingly, Brown's habeas corpus petition is DENIED.

A certificate of appealability is DENIED because reasonable jurists could not disagree with the Court's resolution of Brown's claims, nor conclude that the constitutional issue deserves encouragement to proceed further. *See Miller-El v.*

*Cockrell*, 537 U.S. 322, 327 (2003). Should Brown nonetheless choose to appeal, he may do so without prepaying the appellate filing fee.

    SO ORDERED.

    Dated: August 24, 2021

                                          s/Laurie J. Michelson
                                          LAURIE J. MICHELSON
                                          UNITED STATES DISTRICT JUDGE